CLEMENT A. WILSON, Executor of the will of HANNAH GODFREY, deceased, and others, her heirs at law, and devisees and legatees named in her will agt. PETER B. LYNT, and THE BAPTIST CHURCH in Oliver street in the city of New-York.

In 1845, Hannah Godfrey, the testatrix, made her will, whereby she directed that upon the death of her mother, the value of her lot fronting on Constant street in the village of Hastings, (in the county of Westchester, New-York,) should be estimated as land only, irrespective of any improvements which should · be made thereon, and that the amount so estimated should be paid by her executors out of the produce of her real or personal estate, to the trustees of the Baptist church in Oliver street, in the city of New-York, to be by them put out at interest *until*, with the additions which should be made by subscriptions or otherwise, a sufficient sum should accumulate to enable the trustees of that church to erect in the said village of Hastings, a church or place of worship for christians of the Baptist denomination.

The will contained a general power to the executors as trustees, to sell and dispose of all the real and personal estate of the testatrix, and directed them to divide the proceeds, after the payment of her debts and the performance of the trusts mentioned in the will, to her brothers and sister, and the children of a deceased brother.

The testatrix after the making the will, sold the lot on Constant street, for $250. The value of the lot subsequently increased so that at the death of her mother in 1856, it amounted to from $1,000 to $1,500, irrespective of any improvements made thereon, subsequent to the date of the will.

After the date of the will and during the lifetime of the testatrix, a church was erected by the Baptists in Hastings, sufficient to accommodate all of that de-

Wilson agt. Lynt.

nomination residing in that part of the county, to which she contributed the sum of $50.

The acting executor having in his hands about $700, the remains of the personal estate of the testatrix, after payment of debts and expenses, and all her bequests, except those to the Baptist church, and the residuary legatees; and having sold the real estate to the defendant Lynt, for $2,600, but not having given any title, the plaintiffs asked this court for a legal construction of the doubtful provisions of the will.

*Held*, that under the Revised Statutes, (1 *R. S.* 773, § 4,) and the decision of the court of appeals in *Williams* agt. *Williams*, (4 *Seld.* 525,) applying the provisions of the statute to bequests to religious societies, the direction for *accumulation* for that object in the will was *inoperative and void*.

As the fund could not be used for the designated purpose nor for any other, according to the terms of the will, except to accumulate until there should be sufficient to erect the church at Hastings, the *absolute ownership* would in the meantime be suspended. That might be for a longer period than during *two lives* in being at the death of the testatrix, contrary to the express provisions of the Revised Statutes.

The question then arises, are devises and bequests to religious incorporated societies *exempt* from the provisions of the Revised Statutes to prevent *perpetuities ?*

*Held*, that the decision of the court of appeals in *Williams* agt. *Williams*, (4 *Seld.* 525,) must control and govern the decision of that question in this case; that is, that the general and strong language of the Revised Statutes against the perpetual suspension of the absolute ownership of personal property, is *inapplicable to religious societies*, and that as to them such suspension may endure for all time to come. (*From which decision the judge differed in toto in cœlo, and would have decided adversely had it been considered an open question.*)

*Held*, therefore, that the legacy to the Baptist church, could not be sustained either as a contribution towards building another church, or to defray the expenses of the edifice which was erected during the lifetime of the testatrix. 1st. That the bequest could not be effectuated without violating the provisions in the Revised Statutes against accumulation. 2d. That the proposed object had been accomplished through other means in the lifetime of the testatrix.

Besides, *it seems* that trustees of an incorporated religious society have not the capacity to take property devised or bequeathed to them in trust for other societies.

*Held* also, that although the legacy to the Baptist church was void, the power to sell the real estate of the testatrix was valid, and that the defendant Lynt must complete his purchase.

*Brooklyn Special Term, December,* 1857.

APPLICATION by plaintiffs for the construction of provisions in a will.

H. S. MACKAY, *for plaintiffs.*
R. S. ROWLEY, *for defendants.*

S. B. STRONG, Justice. The testatrix by her will directed that upon the death of her mother, the value of her lot fronting on Constant street, in the village of Hastings, (in the county of Westchester,) should be estimated as land only, irrespective of any improvements which should be made thereon, and that the amount so estimated, should be paid by her executors out of the produce of her real or personal estate, to the trustees of the Baptist church in Oliver street, in the city of New-York, to be by them put out at interest, until with the additions which should be made by subscriptions or otherwise, a sufficient sum should accumulate to enable the trustees of that church to erect in the said village of Hastings a church or place of worship for christians of the Baptist denomination. The will contains a general power to the executors as trustees, to sell and dispose of all the real and personal estate of the testatrix, and directs them to divide the proceeds, after the payment of her debts and the performance of the trusts mentioned in the will, to her brothers and sister, and the children of a deceased brother. The will was made in 1845. The testatrix afterwards sold the lot on Constant street for $250. The value of the lot subsequently increased, so that at the death of her mother in 1856, it amounted to from $1,000 to $1,500, irrespective of any improvements made subsequently to the date of the will. The acting executor has now in his hands about $700, being what remained of the personal estate of the testatrix, after payment of her debts and funeral expenses, and all her bequests, except those to the Baptist church and the residuary legatees. He has recently sold the real estate to the defendant Lynt, for $2,600, who is willing to take a conveyance and pay the purchase money, provided this court shall decide that the executor can make a good title, but (as he is advised that the power to sell and convey the land is doubtful) not without, and until such determination. After the date of the will, and during the lifetime of the testatrix, a

Wilson agt. Lynt.

church was erected by the Baptists in Hastings, sufficient to accommodate all of that denomination residing in that part of the county, to which she contributed the sum of fifty dollars. The plaintiffs now ask for a determination of this court, giving a legal construction of the will, and passing upon the validity of its doubtful provisions, in order that the executor may safely execute the powers conferred upon him, the purchaser may be quieted in his title or protected in refusing to take any, and the beneficiaries under the will may receive the portions to which they are entitled.

The principal question involved in this action, relates to the bequest to the Baptist church in New-York, for the erection of a church edifice for worshipers of the same denomination in Hastings. It has been contended for various reasons, that it cannot be maintained. The counsel for the plaintiffs suppose, that if it had originally sufficient elements of vitality it failed upon, and by reason of the sale of the lot on Constant street by the testatrix after she had executed her will. That would have been the effect if the devise had been of that lot or its proceeds. But it was not of either. The will directed that the lot should be estimated, and that the amount at which it should be estimated, should be paid to the trustees of the church out of the produce of her real or personal estate. The lot was designated simply to ascertain and fix the extent of the gift. Possibly, the testatrix may have supposed that her residuary donees would have an equivalent in the lot to what would be deducted from their respective portions; but a devise or bequest does not fail simply because the moving consideration may have ceased to exist, or to be available. The fact that the will was not subsequently revoked or altered, would be indicative of a continuance of the intent, whatever may have been the original motive.

There is no positive direction to erect a church at Hastings, but as the trustees of the church in New-York are required to put out at interest the principal fund bequeathed to them until with the additions from subscriptions or otherwise, a sufficient sum should accumulate to enable them to erect the church

at Hastings, a direction to that effect is clearly and sufficiently implied.

The proposed accumulation is not exclusively, if at all, for the benefit of minors, nor is it to terminate at the expiration of the minority of any one. It is not therefore such as are allowed by the Revised Statutes. (1 *R. S.* 773, 774, § 3.) Those statutes provide (§ 4) that all directions for the accumulation of the interest, income or profits of personal property other than such as are therein allowed, shall be void. As the court of appeals have permitted that provision to apply to bequests to religious societies, (*Williams* agt. *Williams*, 4 *Selden*, 525,) the direction for accumulation in the will in question is inoperative and void.

As the fund could not be used for the designated purpose, nor indeed for any other, according to the terms of the will, except to accumulate until there should be sufficient to erect the church at Hastings, the absolute ownership would in the meantime be suspended. That might be for a longer period than during two lives in being at the death of the testatrix. The Revised Statutes declare that the absolute ownership of *personal property* shall not be suspended by *any limitation or condition whatever* beyond the lives which I have indicated. That avoids the bequest in question, unless it is saved by the consideration that it is to a religious society and for pious purposes.

It has been supposed that devises and bequests to religious incorporated societies are exempt from the provisions of the Revised Statutes to prevent perpetuities. One reason assigned is, that the act relative to religious societies which at the time of its passage authorized them to hold property in effect in perpetuity, has not been repealed. It is true that religious societies might previously to the passage of the Revised Statutes have held property for an unlimited period. So might in effect any family. But it by no means follows that an express limitation to that effect would have in either case been valid. Possibly it might have been allowed to religious societies, as there was no statutory provision to the contrary. Perpetuities were

not antecedently prohibited by statute. They were prevented by judicial legislation, and the same power may have sanctioned an exemption from the general rule in favor of ecclesiastical bodies. But there is nothing in our statutes relative to religious societies, requiring them to hold property given to 'them in perpetuity. Indeed, they are expressly authorized to sell *any* real estate belonging to them through an order of a court of equity. (3 *R. S.* 210, § 11.) According to the decision of the court of appeals in *Robertson* agt. *Bullions,* (1 *Kernan,* 287, 8*th proposition,*) it is at least doubtful whether a religious incorporated society can take a title to real estate with a perpetual suspension of this power of alienation. Clearly these religious societies can take and hold lands or personal property for two lives, or a shorter term, under their general authority to purchase and hold real and personal estate. (3 *R. S.* 205, § 4.) The greater power to acquire the fee or the absolute property, includes the less, provided that is not crippled by any illegal restriction. General laws relative to the acquisition of property and the duration of estates, ordinarily relate to corporations as well as individuals, whether the acts of incorporation are continued with or without express modification. It has never been supposed that religious incorporations were exempt from the provisions of the Revised Statutes prescribing the manner of making wills or contracts. Why should gifts to religious societies be in perpetuity? Is it not enough that one should control the destination of his property for two lives beyond the period when it can be subjected to his use? If after that period has expired it must be subject to the absolute disposal of those who may be controlled by new and unforeseen circumstances, can that be prejudicial to the cause of religion? Surely not, if the officers of the society should be faithful and conscientious, and if not, who can guard property from the future abuse of bad men? It seems to have been the general opinion in England, from the time of the statute of mortmain, down to the passage of the act of 3 George the IId, (*chapter* 36,) that donations to corporations, whether for secular or pious purposes, should be subjected to

some restrictions, and in that sentiment there is a very general concurrence in this country. But if they are not subject to the restrictions upon the acquisition and enjoyment of property provided in the Revised Statutes, there are none in this state. And men who are conscience stricken upon their death beds, may divert their property from the enjoyment of those who may have strong natural claims upon them, and appropriate it forever to the advancement of a religion which may or may not be true.

It has been decided, however, by our court of appeals, that the general and strong language of the Revised Statutes, against the perpetual suspension of the absolute ownership of personal property is inapplicable to religious societies, and that as to them, such suspension may endure for all time to come. (*Williams* agt. *Williams, supra.*) In differing from that high tribunal in that particular, as I do *toto in cœlo*, I may be exempted from the charge of presumption, by the history of the case which I have just cited. That action was brought to annul two legacies, one to a religious society and the other to certain trustees for a charitable purpose, of 6,000 dollars each, to accumulate by the addition of half of the income, until each should amount to 10,000 dollars, to be held in perpetuity for purposes which permanently suspended the absolute ownership. In its different stages it was heard by eleven judges. Of those, Judge Ruggles, (who had as vice-chancellor affirmed the validity of those bequests,) and Judge Denio, of the court of appeals, and Justices Morse, Mason and Willard, of the supreme court, (but sitting in the court of appeals,) sustained the legacies, while they were condemned as null and void by Judges Gardiner and Johnson, of the court of appeals, and Justices Taggart, (sitting in that court,) Mr. Cowen, Barculo and Brown, of the supreme court, so that the judgment which was eventually pronounced, was actually against the opinion of a majority of the judges. Possibly that may lead to a reconsideration of the questions involved, and a different determination by that high tribunal, especially as it has in some instances reversed its own decisions. (*Brewster*

agt. *Silence*, 4 *Selden*, 209, *expressly overruling Brown* agt. *Curtis*, 2 *Comstock*, 225; and *Durham* agt. *Manrow*, *Idem*, 583, and *Robertson* agt. *Bullions*, 1 *Kernan*, 243, and an unreported case relative to a direction for charitable purposes to an unincorporated association, overruling some of the points decided in *Williams* agt. *Williams*.) In this court, however, I am bound by the decision in *Williams* agt. *Williams*, and in accordance with it, must hold that donations to incorporated religious societies, are exempt from the provision of the Revised Statutes to prevent perpetuities.

There are, however, two strong objections to the validity of the bequest to the Baptist church in this case, which remain to be considered. First, that it could not be effectuated without violating the provisions in the Revised Statutes against accumulation; and, Second, that the proposed object was accomplished through other means in the lifetime of the testatrix. If it can be sustained at all, notwithstanding the direction for an illegal accumulation, it must be through the English doctrine of *cy pres* or approximation. In England, where property has been donated for charitable purposes, it is considered as an absolute dedication, and that where the object cannot be accomplished as donated or designed by the donor, the king can by virtue of his prerogative, through his chancellor, upon an information filed by the attorney-general, devote it to some charitable use corresponding as near as may be with the original design. In the case of *Williams* agt. *Williams*, the court of appeals made a practical application of that doctrine. There was a direction in the bequest of the principal sum to the religious society, that one-half only of the income should be appropriated in payment of the salary of the clergyman of the parish, until the principal should be increased by accumulation to a specified sum, nearly double of the original amount. The court decided, however, that the entire income might be paid towards the clergyman's salary from the interest. That was contrary to the donation in the will, and could only be justified, if at all, by the principle of approximation Still, the learned judge who gave the prevailing opinion said : " It is

unnecessary to decide in this case, whether we could proceed upon the notion of approximation, when it is impossible to execute the gift substantially according to the terms of the grant or devise. My own opinion is, that the distribution of powers among the great departments of the government, which is a fundamental doctrine in the American system, would prohibit the courts from exercising a jurisdiction so purely discretionary." In the unreported case in the court of appeals to which I have alluded, the non-applicability of the doctrine of approximation in donations for charitable purposes, is expressly adjudicated. In the case under consideration, therefore, the legacy to the Baptist church cannot be sustained either as a contribution towards building another church, or to defray the expenses of the edifice which was erected during the lifetime of the testatrix.

I am strongly inclined to agree with the counsel for the plaintiffs, that the trustees of an incorporated religious society, have not the capacity to take property devised or bequeathed to them in trust for other societies. It is not given to them by the statute relative to religious incorporations, and they have none from any other source. The trust is not confided to the trustees as individuals, but in their official capacity, and as officers they cannot take property except for the use of their society.

The remaining question is, whether as the power to sell the property of the testatrix was for the purpose of paying the legacy to the church which has failed, as well as for the satisfaction of other legacies, it is still valid and can be successfully executed? If the sole object of the power had been to raise the requisite funds for the payment of the rejected legacy, it would have doubtless failed. But that was one only, and not positively one, of the objects for which the property was to be sold. The main design was to effectuate an eventual distribution of the principal part of the property of the testatrix among her favored relatives. In such cases, where the principal design can yet be effectuated, although some comparatively unimportant object not expressly qualifying the delega-

tion, (and it is not thus qualified in this instance,) may fail, the power is valid and of course available. It would be most unreasonable and unjust to hold that a power to sell such estate for the payment of legacies must fail, because one of such legacies may have lapsed or failed for any cause. The title of the defendant Lynt, to the property purchased by him, could not, as he seems to apprehend, be invalidated by any misapplication of the purchase money by the acting executor. (1 *R. S.* 730, § 66.)

No objection has been raised that the causes of action in this case could not with propriety be included in one suit. As the objection if raised, might have been in effect obviated by the substitution of distinct suits for the separate causes of action, it can be effectually waived. A decree must be entered declaring that the proposed legacy to the Baptist church is void, that the power to sell the real estate of the testatrix is nevertheless valid, and that the defendant Lynt must complete his purchase.

The costs of the several parties must be paid out of the estate or its avails in the hands of the executor.

---

## SUPREME COURT.